## HOWLAND *v.* GATES.

Certain creditors of P., an insolvent debtor, signed a composition agreement to accept thirty-five per cent. of their claims in discharge thereof. P. at the same time pledged to H. certain property, and mortgaged certain other property, to indemnify H. for signing certain notes as his surety. H. did not otherwise agree to pay the percentage upon the claims of those creditors who signed the composition agreement. In an action by H. against G., one of the composition creditors, to recover a debt due from G. to H.—*Held*, that G. could not set off against H.'s claim the dividend due him from P., G.'s claim against P. not being one of the claims secured by the mortgage and pledge.

A novation is not presumed.

ASSUMPSIT. The defendant filed the following set-off: "On the first day of April, 1878, at Gorham in said county, one Walter H. Philbrook, of said Gorham, was justly indebted to the defendant in the sum of $385.47 upon a winding up of the partnership affairs theretofore existing between them, and, in consideration that said Philbrook did then and there assign, transfer, and make over, by way of mortgage and otherwise, to the plaintiff, a large amount of real estate, and also a large amount of personal property, to wit, a stock of goods in the store formerly occupied by the defendant and said Philbrook in said Gorham, a number of horses and carriages and other property, being substantially all the estate, both real and personal, owned and possessed by said Philbrook, the said

plaintiff did then and there promise and undertake that he would pay the defendant thirty-five cents on each dollar of the indebtedness of said Philbrook to him: and the defendant avers that, although the said Howland has been requested to perform his contract as aforesaid, he neglects and refuses."

Facts found by a referee. "About April 1, 1878, Walter H. Philbrook, who had been in trade, failed with liabilities amounting to about $4,500. Several suits had been brought against him. Papers were drawn up and sent to his creditors to see if they would sign off for thiry-five cents on the dollar for their claims. Most of them signed. The paper signed by the defendant reads as follows:

" ' We, the undersigned creditors of Walter H. Philbrook, of Gorham, New Hampshire, hereby agree to settle and fully discharge all our claims against him, which are not otherwise secured, on the payment to each of us of thirty-five cents on each dollar of the sum set against our name: the same to be paid in cash or a good note or notes, payable all within six months from April 1, 1878, with interest,—the sums hereinafter mentioned being our whole unsecured claims against him the said Philbrook.

| NAME. | RESIDENCE. | | AMOUNT. |
|---|---|---|---|
| S. M. Leavitt, | Gorham, N. H. | | $100.00 |
| Stephen Gordon, | " | " | 46.00 |
| J. Jewell, | " | " | |
| A. E. Philbrook, | " | " | 45.00 |
| W. B. Gates, | " | " | |
| Geo. L. Smith, | " | " | |
| S. B. Hubbard, | | | 215.63 |
| Demond Brothers, | | | |

"Philbrook made a bill of sale of all his personal property to the plaintiff, and executed a mortgage of his real estate, subject to another mortgage, for about $900, to secure the plaintiff against this liability of the thirty-five per cent.

" The plaintiff contended that he was to pay only such creditors as signed off for the per cent. and took his note; and that the defendant, although he signed the paper, did not put down the amount of Philbrook's indebtedness to him; and he therefore gave him no note, and never in any way became liable to pay the thirty-five per cent. on the defendant's claim against Philbrook.

" The defendant and Philbrook contended that the claim of the defendant against Philbrook was talked over between them, but that, in the hurry, he had not time to figure up the amount of his claim, but signed the paper, leaving the amount of his claim blank. Others did the same thing, and Howland paid all but Gates.

"I find that it is more probable than otherwise that all hands understood at the time of the signing off for the per cent., that the plaintiff was to pay the thirty-five per cent. on the claims of those

signing, and yet I have no doubt that the plaintiff testifies truly when he says it was represented to him by Philbrook that the amount was quite small. Gates, however, made no such representations.

" The plaintiff objected to the set-off, and claimed that the defendant could not recover on it in this action; and this is the only real question in the case. I do not pass upon it, but submit it to the court. If the court is of the opinion that the defendant's claim cannot be set off in this action, I find that the plaintiff recover the amount of his specification, $23.14, and interest from the date of the writ. If the defendant can set off his claim, then I find that he recover, on his set-off, $111.77, and interest from the date of the writ.

"At the plaintiff's request, I further report that his books show he has already paid out for Philbrook over $200 more than he has received on his account, and he has some $75 worth of accounts received of Philbrook yet to collect. Also, that Howland was not present when the amount of the defendant's claim was agreed on between him and Philbrook, and was not spoken to by the defendant in regard to it until the fall of 1878, and then the plaintiff replied that he wanted to look the matter over, as 'these bills were getting too plenty.' Philbrook, who worked for the plaintiff through the summer of 1878, had frequent talks with the defendant about the claim, and said 'We will fix it up soon,'—the defendant saying that he understood 'we' to mean Howland."

*A. R. Evans*, for the plaintiff.

*Ladd & Fletcher*, for the defendant.

CLARK, J. If the finding of the referee, "that it is more probable than otherwise that all hands understood, at the time of the signing off for the per cent., that the plaintiff was to pay the thirty-five per cent. on the claims of those signing," is to be regarded as a finding that the plaintiff promised and agreed with the defendant to pay him thirty-five per cent. of his claim against Philbrook in consideration that he would accept it and discharge Philbrook therefrom, there is no serious question in the case. If, as the defendant contends, this is the true construction of the language used by the referee, the defendant's set-off should be allowed. If such a contract was made between the plaintiff and the defendant it was upon a sufficient consideration, and was not within the statute of frauds. It was not a promise by the plaintiff to pay Philbrook's debt, but an original undertaking to pay his own debt incurred in consideration of the defendant's discharge of Philbrook's indebtedness to him upon the plaintiff's paying or assuming to pay thirty-five per cent. of that indebtedness. Nor is the objection that the set-off is for unliquidated damages well founded.

Although the amount of the claim was not fixed at the time, it could be readily ascertained by an examination of accounts, and a claim is not unliquidated that can be rendered certain by mere computation. And if the claim was for unliquidated damages when the alleged promise was made, it had been ascertained and made certain before the commencement of the action, which would remove the objection.

The objection to the set-off lies in another direction. In our view the defendant has no legal claim against the plaintiff. Unless we have entirely misapprehended the finding of the referee, the report does not show that the plaintiff ever promised to pay the defendant thirty-five per cent. of Philbrook's indebtedness, or made any agreement with him respecting it. We do not understand, from the language used by the referee or from any facts appearing in the case, that there was any agreement between the plaintiff and the defendant respecting the payment of Philbrook's debt; and it is expressly found that the defendant never spoke to the plaintiff about it until the fall of 1878, whether within six months from April 1, 1878, does not appear. Certain of Philbrook's creditors agreed to discharge their unsecured claims against him for thirty-five cents on the dollar, providing they were paid that sum in cash, or in good notes payable within six months from April 1, 1878, with interest, and this agreement was made between Philbrook and his creditors. The agreement was in writing, and appears in the case. Among the names of those signing the paper is the name of the defendant, but no sum is set against his name. There is nothing in the written agreement indicating that the plaintiff was a party to it or that the creditors relied on him for the payment of the thirty-five per cent., and the terms of the agreement negative any such conclusion. The creditors agreed to accept thirty-five per cent. in consideration of being paid in cash or good notes payable within six months with interest, and not in consideration that the plaintiff would pay or secure them by his notes. Conceding that the creditors signing understood that the plaintiff was to make the payments, and that Philbrook had or would make arrangements with him to assist him by furnishing the money or giving his notes or making the payments for him, such an understanding on the part of the creditors and Philbrook did not constitute a contract between the creditors and the plaintiff such as would enable the creditors to enforce payment by the plaintiff, or maintain an action against him for the thirty-five per cent. And this is what we understand the report to mean: not that there was an agreement between the plaintiff and the creditors that bound the plaintiff to the payment of the thirty-five per cent., but merely that it was the opinion or expectation of the creditors that the plaintiff would aid Philbrook in making the payments.

Another circumstance supporting this view is the fact that it does not appear that the defendant ever called upon the plaintiff

or notified him of the amount of his claim until after the time of payment fixed by the written agreement had expired, and it does appear that he had frequent talks with Philbrook about it, indicating that the defendant understood that he had no legal claim upon the plaintiff. By the terms of the composition agreement the defendant was to accept thirty-five per cent. of his claim in full discharge if paid within six months from April 1, 1878. No payment was made, and the condition was not complied with. Philbrook would have no defence to an action by the defendant to recover of him the full amount of his claim; and if the defendant can now maintain an action against Philbrook for the full amount of the claim, upon what legal ground can he maintain an action against the plaintiff to recover thirty-five per cent. of it?

The report states that Philbrook made a bill of sale of all his personal property to the plaintiff, and executed a mortgage of his real estate, subject to another mortgage for about $900, to secure the plaintiff against the liability of the thirty-five per cent. The mortgage and bill of sale have been furnished to the court. The condition of the mortgage is,—"That if the said Walter H. Philbrook, his heirs, executors, and administrators, shall indemnify the said Parker Howland and his heirs against all loss, cost, damage, and expense to which he or they may be subjected by reason of said Howland signing, at the request and for the benefit of said Philbrook, the following described notes, all payable to the order of said Walter H. Philbrook, and indorsed by said Philbrook, dated April 1, 1878, due in six months from date, being severally for the following sums, viz., $199.23, $137.66, $64.56, and $52.50, all of said notes being payable at any bank in Portland, Me., with interest, for value received, then the foregoing deed is to be void . . ." The mortgage is dated April 3, 1878. The bill of sale is dated April 1, 1878, and is "in consideration of one thousand dollars to me in hand, and for my benefit, paid by Parker Howland . . ." And the property is warranted free of incumbrances and against any adverse claims, "except the attachments recently made by my creditors, which are to be paid and discharged by an agreement with them,—said Howland being my surety for the same, in part of the consideration above mentioned." In these documents the claims to be paid or secured are treated as debts of Philbrook, and the plaintiff's contract or agreement with Philbrook as one of suretyship; and such we understand the undertaking of the plaintiff to have been,—to assist Philbrook in paying his creditors to the extent of the value of the property received by him; that he assumed no liability beyond that; that there was no novation and no assumption of the debts by the plaintiff, and no release or discharge of Philbrook by the creditors; that the debts remained the debts of Philbrook; that no promise to pay them is shown to have been made by the plaintiff, and, if there had been, it must have been in writing to be valid, being a promise

to pay the debt of another; and no promise can be inferred on the part of the plaintiff to pay beyond the value of the property received from Philbrook; and the case shows that the plaintiff has already paid out for Philbrook over $200 more than he has received on his account. If these views are correct, there is no ground, legal or equitable, on which the set-off can be allowed.

*Set-off rejected.*

All concur.